UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENNIS V. MARKOV,

      Plaintiff,

v.                Case No. 22-cv-1312-pp

CARLO GANNON, CHONA ARONG
and TOM MICHLOWSKI,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

 Dennis V. Markov, an individual incarcerated at the Wisconsin Resource Center (WRC) who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights by limiting the amount of water he could drink per day. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and dismisses it for failure to state a claim.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

 The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On November 8, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $38.81. Dkt. No. 4. The court received that fee on November 22, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.   Screening the Complaint**

   A.   Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued medical doctors Carlo Gannon and Chona Arong and psychiatrist Tom Michlowski, all of whom work at WRC. Dkt. No. 1 at 1. The plaintiff is serving two consecutive life sentences for first-degree intentional homicide. See State of Wisconsin vs. Dennis V. Markov, Ozaukee County Case Number 2011CF000074 (available at https://wcca.wicourts.gov/case.html). He alleges that he is incarcerated at WRC for the eighth time. Dkt. No. 1 at 2. He says the past five times he was at WRC were for a "Ch 51.20 hearing in court,"

which he says relates to his involuntary commitment for treatment of his schizophrenia. Id. at 2; Dkt. No. 1-1 at 9; see Wis. Stat. Ann. §51.20 ("Involuntary Commitment for Treatment"). The plaintiff says that when he is not at WRC for this yearly hearing, he is incarcerated at Waupun Correctional Institution. Dkt. No. 1 at 2.

The plaintiff alleges that the doctors at WRC placed the plaintiff on a water restriction, which limits him to three, sixteen-ounce cups of water, coffee or Kool-Aid per twenty-four hours. Id. The plaintiff says he was sent back to Waupun from WRC in April 2022 and nurses there took his blood for medical tests. Id. Those tests showed the plaintiff's sodium level was low, so they told him "they [were] going to send [him] to WRC to be put on a water restriction just like WRC does for [him] everytime [he] go[es] there." Id. at 2–3.

The plaintiff says he arrived back at WRC on June 6, 2022 and doctors imposed the same water restriction. Id. at 3. He says that as of October 13, 2022, he still was at WRC on the water restriction, and WRC officials told him they did not want to send him back to Waupun any time soon. Id. The plaintiff has had his blood drawn three or four times at WRC, and a doctor told him "only [one] came back good." Id. The plaintiff says this is the first time Waupun officials sent him to WRC for the water restriction. Id. He says the weather was hot outside at the time he drafted the complaint, but he still was allowed only three, sixteen-ounce cups of water per day. Id.

The plaintiff attached to his complaint an institutional complaint report from a July 2022 grievance he filed about his water restriction. Dkt. No. 1-1.

4

He did not include the grievance itself. An institutional complaint examiner reviewed the plaintiff's grievance on August 10, 2022 and recommended dismissing it. Id. at 2. The complaint examiner reviewed a psychological referral, a physician's note, nursing progress notes and correspondence to the plaintiff from May to July 2022. Id. The complaint examiner noted that the plaintiff was transferred to WRC in June 2022 because of his "history of psychogenic polydipsia that resulted in his sodium level dropping to 124 on 05/19/22."[1] Id. The complaint examiner stated that the plaintiff was placed on a fluid restriction at WRC of 1.6 liters per day, which was later increased to 2.2 liters per day. Id. Medical staff provided the plaintiff papers "outlining the details of this restriction." Id. But the plaintiff was observed consuming fluids above that limit "by drinking out of toilets and bathroom sinks." Id. The complaint examiner made note of the plaintiff's dissatisfaction with the water restriction but explained that "this restriction was created in response to incidents in which [the plaintiff] was discovered to have dangerously low sodium levels." Id. The complaint examiner explained that medical staff regularly reviewed the plaintiff's water restriction and advised the plaintiff "to discuss this matter with his providers and the members of his treatment team." Id.

---

[1] Psychogenic polydipsia is also known as "self-induced water intoxication," and it describes compulsive water drinking that is often shown by persons with mental illness. See Psychogenic Polydipsia – Management Challenges, National Library of Medicine, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5579464/.

On August 23, 2022, a reviewing authority accepted the complaint examiner's recommendation and dismissed the complaint. Id. at 1. The reviewing authority agreed with the complaint examiner that the plaintiff's water restriction "[wa]s in place for patients' own safety [due to] history of habits putting his health in danger." Id. The reviewing authority encouraged the plaintiff "to be compl[ia]nt with water restriction and refrain from utilizing inappropriate water sources for consumption, for his own safety." Id.

On September 16, 2022, a corrections complaint examiner received the plaintiff's appeal from the dismissal of his complaint about his water restriction. Id. at 4. The corrections complaint examiner recommended dismissing the appeal because WRC staff had "responded to the complaint," and the behavioral health services nursing coordinator explained the water restriction was in place "to ensure the health and wellbeing of" the plaintiff. Id. at 5. About two weeks later, the Office of the Secretary accepted the corrections complaint examiner's recommendation and dismissed the appeal. Id. at 6.

On August 23, 2022, the complaint examiner's office received a second complaint from the plaintiff about his restriction on water and coffee. Id. at 7. The complaint examiner rejected this complaint because the plaintiff previously had raised those challenges, and the complaint examiner's office had dismissed his grievances about his liquid restrictions. Id. The complaint examiner noted that the plaintiff's restriction had "recently been updated to include 2500mL of water per day" and "to allow for three cups of coffee at any point during the day between 6:00am and 6:00pm." Id.

On November 21, 2022, the court received from the plaintiff a supplement with additional allegations that he says he included because "the information [he] provided in the packet was not enough." Dkt. No. 6 at 1. The supplement alleges that because of the water restriction the defendants placed on the plaintiff, he has experienced headaches, fever and dizziness, and he sometimes faints or falls. Id. at 2. He says he remains at WRC on the same water restriction. Id. The plaintiff says he "can't live like this for much longer" and "feel[s] like [he] can die because of the restriction." Id.

The plaintiff seeks "an award of money for every time [he] got placed on a water restriction" at WRC. Dkt. No. 1 at 4.

C. Analysis

The court reviews the plaintiff's allegations regarding his water restriction and its resulting health problems under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*)

(citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837).

The court reviews both the complaint and its attachments for purposes of screening. See Arnett v. Webster, 658 F.3d 742, 746 (7th Cir. 2011) (noting that documents "attached to the complaint" are "part of the complaint"); Lindell v. Huibregtse, 205 F. App'x 446, 449 (7th Cir. 2006) (explaining that documents attached as exhibits to a complaint "are deemed to be a part of the complaint and [may be] properly considered by the district court at the screening stage"). The plaintiff's mental illness is an objectively serious medical condition, as are his dangerously low sodium levels. But the complaint and its attachments do not show that the defendants have been deliberately indifferent to those conditions; those documents show that the defendants have implemented the water restriction to protect the plaintiff's health and safety.

The plaintiff alleges that the defendants have placed him on a water restriction while he is at WRC that has led to various physical symptoms, including dizziness, headaches and occasional fainting. But the documents he attached to his complaint show that WRC medical staff placed the plaintiff on this water restriction because of a condition that results in dangerously low sodium levels. Rather than placing him on this restriction to punish him or for

8

no reason, medical staff are attempting to limit his fluid intake to protect him. That is not deliberate indifference. See Zaya v. Sood, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). This court will not interfere with the plaintiff's doctors' course of treatment "unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." Pyles, 771 F.3d at 409 (7th Cir. 2014) (citing Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)). The complaint contains no indication that the defendants have unreasonably restricted the plaintiff's water; quite the opposite, the complaint and its attachments show that the plaintiff's doctors have continuously monitored the plaintiff's sodium level and adjusted his fluid restrictions over time based on his behavior and his sodium level.

      The plaintiff says that his blood sodium level has been at a good level only once in the three or four times WRC staff took his blood prior to the date he filed the complaint. But the complaint examiner noted that the plaintiff had been observed drinking extra water from toilets and sinks. That suggests the plaintiff's sodium level has been off, not because of his water restriction, but because he is not following his doctors' orders and is consuming extra fluids. The plaintiff may not agree with those orders, but his disagreement alone does not constitute a violation of a constitutional right and does not state a claim

9

under §1983. See Estelle, 429 U.S. at 107; Johnson v. Dominguez, 5 F.4th 818, 826 (7th Cir. 2021).

District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding his claim about his water restriction. The court finds that additional facts would not change its conclusion, and that amendment would be futile.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$311.19** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Director of the Wisconsin Resource Center.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Fed. R. Civ. P. 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Fed. R. Civ. P. 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of December, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**